IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON KOKINDA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 16-1303 |
| | ) | |
| v. | ) | |
| | ) | |
| PENNSYLVANIA DEPARTMENT OF | ) | United States District Judge |
| CORRECTIONS, DR. BYUNGHAK | ) | Mark R. Hornak |
| JIN, CHISTOPHER H. OPPMAN, | ) | |
| PRISON HEALTH SERVICES, INC., | ) | |
| PATRICIA STOVER, CORIZON, INC., | ) | United States Magistrate Judge |
| PRISON HEALH SERVICES | ) | Cynthia Reed Eddy |
| CORRECTIONAL CARE, INC., IRMA | ) | |
| VIHLIDAL, MARK DIALESANDRO, | ) | |
| DSCS, SUPERINTENDENT ROBERT | ) | |
| GILMORE, JOHN DOE #1, CHCA, | ) | |
| JANE DOE #1, | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

Pursuant to the authority granted to courts by 28 U.S.C. § 1915(e)(2), it is respectfully recommended that all of the claims in Plaintiff's *pro se* complaint, except for the Eighth Amendment claim, be dismissed *sua sponte* for failure to state a claim upon which relief can be granted. However, it is further recommended that Plaintiff be granted leave to file an amended complaint to cure the noted deficiencies, to the extent that he can.

**II.    REPORT**

**A.     Factual and Procedural Background**

Plaintiff Jason Kokinda, a former prisoner, initiated this *pro se* civil rights action by filing a motion for leave to proceed *in forma pauperis* on August 26, 2016, and his complaint was filed

1

on August 31, 2016. (ECF No. 3). Plaintiff contends that from September 3, 2014 until November 1, 2015, while incarcerated at SCI-Greene, the above-captioned Defendants acted with deliberate indifference in failing to provide and/or failing to follow-up on "the non-standard therapeutic 'No Soy' diet he required." According to Plaintiff, he informed Defendants, who consist of certain prison officials, medical personnel, medical providers, and the Pennsylvania DOC, that he has a soy allergy, however, no dietary accommodations were ever made and he was forced to "continue to cope on an unhealthy commissary diet." Moreover, Plaintiff claims that prison officials lied to him by informing him that the oatmeal, grits, and all other food, except for fruit, were no-soy when these foods in fact contained soy, which caused Plaintiff to experience "side-effects [that] he had previously attributed to anti-psychotic medications; until his mother sent him information from Weston A. Price Foundation, on or about October 27, 2014."

Once Plaintiff was released from prison and he was able to eat a "normal" diet, he discovered how the soy in the prison food had been affecting him. Plaintiff describes his soy allergy as being "quantity based;" that is, "he typically can eat processed foods that have soy used as an additive emulsifier, and only get gastrointestinal problems," however, if he ingests "[i]solated soy protein, that is used in volume as a filler, [it] triggers the asthmatic/anaphylaxis, rigid muscle knots, facial swelling, and more severe reactions; moments to hours after ingestion." Additionally, "[a]ny amount of soy or soybean oil can cause gastrointestinal problems and exacerbation of Obsessive Compulsive Disorder, minutes to hours after ingestion; leading to severe psychological trauma." The complaint further alleges a variety of other symptoms and side effects that Plaintiff experiences when he ingests products that contain soy.

2

Plaintiff contends that his rights under the Eighth and Fourteenth Amendments have been violated and brings this lawsuit under 42 U.S.C. §§ 1983, 1985(3), 1986, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, et seq. He seeks damages in the amount of $5,000 per day for each day he failed to receive the "NO SOY" diet; punitive damages "jointly and severally in the amount of $15,000 per day for each day that he did not receive the 'NO SOY' diet;" and "[d]eclaratory relief stating that 'it is a violation of the Eighth Amendment of the Constitution … for prison health care providers to make mere pretences [sic] of addressing serious medical needs such as food allergies …"

The Court notes that Plaintiff has previously filed other civil actions in this Court relating to being denied a no-soy diet at three other Pennsylvania state correctional institutions. His claims and requested relief in the previous actions are identical to his claims and requested relief in this action. In particular, on February 10, 2015, he initiated an action at 2:15-cv-179-MRH-CRE while he still incarcerated, which he later abandoned after the Court granted his motion for leave to proceed *in forma pauperis* and directed him to pay the initial partial filing fee of $79.21. Months later, after his release from prison, he initiated an action at 2:15-cv-1593-MRH-CRE, noting on the Civil Cover Sheet that it was related to the previous abandoned action, and reasserted many, if not all, of his previous claims. Like the action at 2:15-cv-1593, Plaintiff indicates on the Civil Cover Sheet of the action *sub judice* that it is related to 2:15-cv-179.

In 2:15-cv-1593, the Court issued a Report and Recommendation on January 13, 2016 (ECF No. 6), which was subsequently adopted as the Opinion of the District Court on February 22, 2016 (ECF Nos. 12, 13). In that case, Plaintiff was complaining of being deprived of a no-soy diet at SCI-Fayette, SCI-Camp Hill, and SCI-Graterford. Relevant here, when analyzing his claims against SCI-Fayette – the only institution located in this judicial district – pursuant to its

mandatory prescreening function prescribed in 28 U.S.C. § 1915(e)(2)(B), the Court dismissed Plaintiff's §§ 1983, 1985(3), and 1986 claims against the Pennsylvania Department of Corrections and the individual prison official defendants sued in their officials capacities in accordance with Eleventh Amendment immunity. (R&R, ECF No. 6 at 7, 8). The Court also dismissed Plaintiff's claims under the ADA, § 1985(3), and § 1986 for failure to state a claim. (*Id.* at 9-12). Because the Court's previous R&R considered and analyzed these similar claims pertaining to the denial of a no-soy diet at SCI-Fayette, the Court will, in the interests of judicial economy, incorporate much of its previous analysis herein relating to the events that allegedly took place at SCI-Greene, to the extent that it is applicable to the present Defendants.

**B.     Applicable Legal Principles**

Plaintiff's complaint *sub judice* is filed *in forma pauperis* by Order of the Court. (ECF No. 3). This Court has a statutory responsibility, given that IFP status, to review the Complaint to determine if it states a valid claim for relief. The Court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

Moreover, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so by the mandatory language of "the court shall dismiss" utilized by Section 1915(e)(2). In performing a court's mandated function of *sua sponte* reviewing complaints under 28 U.S.C. § 1915(e) to determine if they fail to state a claim upon which relief can be granted, a federal district court applies the same standard as applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See, e.g., Powell v. Hoover*,

4

956 F. Supp. 565, 568 (M.D. Pa. 1997) (applying Rule 12(b)(6) standard to claim dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii)).

In reviewing complaints as mandated by 28 U.S.C. § 1915(e) and, consequently, utilizing the standards for a 12(b)(6) motion to dismiss, the complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations of fact in the complaint must be taken as true. *See Estelle v. Gamble*, 429 U.S. 97 (1976). In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6), and hence, also under the PLRA screening provisions. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994).

The question to be resolved is: whether, taking the factual allegations of the complaint, which are not contradicted by exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those contradicted factual allegations of the complaint, are the "factual allegations . . . enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Or put another way, a complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Dismissal is proper under Rule 12(b)(6), and hence, under these screening provisions, where the court determines that the contradicted facts alleged, taken as true and viewed in a light most favorable to the plaintiff, fail to state a claim as a matter of law. *See., e.g., Gould Electronics, Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

Because Plaintiff is *pro se,* the court will accord him an even more liberal reading of the complaint, employing less stringent standards than when judging the work product of an attorney. *Haines v. Kerner*, 404 U.S. 519 (1972). Additionally, if a *pro se* civil rights complaint is deficient, the court must give the plaintiff a chance to amend within a set period of time, unless amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir. 2002). In this context, "'futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).

    C.    **Discussion**

        1.    **Eleventh Amendment Immunity**

As an initial matter, the Court finds that to the extent that Plaintiff names the "Pennsylvania Department of Corrections" as a defendant, his §§ 1983, 1985(3), and 1986 claims must be dismissed *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2) for failing to state a claim and for seeking damages against a defendant who is immune.

The Eleventh Amendment proscribes actions in the federal courts against, *inter alia,* states and their agencies. *Laskaris v. Thornburgh,* 661 F.2d 23 (3d Cir.1981) (Pennsylvania); *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (state agencies). "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14 (1985) (*citing Alabama v. Pugh,* 438 U.S. 781 (1978)). It is well-settled that the DOC, which administers all state correctional institutions including SCI-Greene, is an agency or arm of the Commonwealth of Pennsylvania. Thus, the DOC is entitled to the same Eleventh Amendment immunity that the Commonwealth enjoys. *See*

*Steele v. Pennsylvania,* 2009 WL 614800 at *8 (W.D.Pa. Mar. 6, 2009). No exceptions to Eleventh Amendment immunity are applicable here. The Commonwealth of Pennsylvania has not consented to be sued, *Wilson v. Vaughn,* 1996 WL 426538 at *1 n. 2 (E.D.Pa. July 30, 1996), nor has Congress expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages. *Smith v. Luciani,* 1998 WL 151803 at *4 (E.D.Pa. March 31, 1998), *aff'd,* 178 F.3d 1280 (3d Cir.1999) (Table).

Similarly, those individual prison official defendants sued in their official capacities are immune from claims for monetary damages and retroactive equitable relief. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against an entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)). The Eleventh Amendment not only bars suits against a state by its own citizens, but also immunizes state defendants sued in their official capacities from liability for damages or equitable relief.

Accordingly, to the extent Plaintiff seeks monetary damages against the Pennsylvania Department of Corrections and individuals in their official capacities under 42 U.S.C. §§ 1983, 1985(3), and 1986, it is recommended that the Complaint be dismissed pursuant to 28 U.S.C. § 1915(3)(2)(B)(iii).[1]

### 2. Plaintiff's Claims Under Section 1985(3)

---

[1] Moreover, the DOC and the individual defendants in their official capacities are not "persons" for the purposes of § 1983. In *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 70-71 (1989), the Supreme Court held that a state is not "a person" subject to § 1983 liability and that the non-person status extends to "governmental entities that are considered arms of the state for Eleventh Amendment purposes." Because as discussed above, the DOC is an arm of the state, *Will* provides an additional basis for the dismissal of the § l983 claims as to the DOC and the individual defendants acting in their official capacities. And courts have regularly applied the *Will* doctrine to claims brought pursuant to §§ 1985 and 1986. *See Clark v. Clabaugh,* 20 F.3d 1290, 1295 n. 5 (3d Cir. 1994) (a § 1986 claim is dependent on the existence of a cognizable § 1985 claim).

The complaint also cites to 42 U.S.C. § 1985(3). The Supreme Court of the United States has interpreted § 1985(3) as "requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." *Kush v. Rutledge,* 460 U.S. 719, 725. (1983). It is a well-settled that "intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id*. at 726. The Court finds that the Complaint fails to state a claim for conspiracy under Section 1985(3) for two reasons.

First, Plaintiff has failed to allege sufficient facts from which one could infer an agreement or understanding among the Defendants to deprive Plaintiff of the equal protection of the laws. Indeed, this claim is conclusory and does "not appear to be based in fact, but merely upon [Plaintiff's] own suspicion or speculation." *See Young v. Kahn*, 926 F.3d 1396, 1405 n. 16 (3d Cir. 1991).

Second, Plaintiff does not allege any actionable form of "invidious discriminatory animus" against an identifiable class in his Complaint. *See Farber v. City of Paterson,* 440 F.3d 131, 135 (3d Cir. 2006). There are no factual allegations in the complaint to support its legal conclusions claiming that invidious discrimination occurred at SCI-Greene against "those suffering from 'food allergies' and 'mental disorders,' whom the officials believe they can abuse more easily." (Compl. at ¶ 38). Additionally, and more importantly, the Court is not aware of any case law holding that people with food allergies or people with mental disorders (including obsessive-compulsive disorder) can be deemed an identifiable or protected class. To the contrary, several courts have reached the opposite conclusion. *See Lawson v. Wollenhaupt*, 2004 WL 491014, *7 (D. Conn. 2004) (inmate plaintiff did not belong to an identifiable or suspect class merely because he had a food allergy); *Ismail v. Ford*, 2014 WL 1681993, *5 (C.D. Cal.

2014) (noting that there is no authority to suggest that someone who has "obsessive-compulsive disorder or other psychological or emotional condition" belongs to a protected class); *Carter v. Mich. D.O.C.*, 2013 WL 3270909, \*13 (W.D. Mich. 2013) (even if the plaintiff's obsessive-compulsive disorder qualified as a disability, disabled persons are not a suspect or quasi-suspect class); *Smith v. Fischer*, 2009 WL 632890, \*10 n. 29 (N.D. N.Y. 2009) (the mentally ill and the mentally handicapped do not comprise a suspect class).

Nor is the Court aware of any authority providing that "persons whose Eighth Amendment rights are violated" belong to an identifiable or protected class. (Compl. at ¶ 38); s*ee Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (neither prisoners nor indigents are suspect classes). "In order to ensure that a § 1985(3) class has an independent identifiable existence, a reasonable person must be able to 'readily determine by means of an objective criterion or set of criteria who is a member of the group and who is not.'" *Farber*, 440 F.3d at 136 (quoting *Aulson v. Blanchard*, 83 F.3d 1, 5 (1st Cir. 1996)). In *Bray v. Alexandria Women's Health Clinic*, the Supreme Court stated that "the class 'cannot be defined simply as the group of victims of the tortious action,'" or broadly defined "as those seeking to engage in the activity the defendant has interfered with." 506 U.S. 263, 266-67 (1993) (quoting *United Bhd. of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 850 (1983) (Blackmun, J., dissenting)). Here, Plaintiff's amorphous proposed class definition – persons whose Eighth Amendment rights have been violated – cannot be considered to be a qualifying class. A reasonable person would not be able to readily determine by means of an objective criterion or set of criteria who is a member of this group and who is not. *Farber*, 440 F.3d at 136. Therefore, the complaint fails to allege that Plaintiff belongs to an identifiable or protected class.

Accordingly, for all these reasons, Plaintiff's § 1985(3) claim is deficient and should be dismissed for failure to state a claim.

### 3. Claims Under 42 U.S.C. § 1986

The Complaint also states that Plaintiff is bringing his claims under 42 U.S.C. § 1986, which provides, *inter alia,* as follows:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act committed, shall be liable. . . .

A violation of § 1986 requires an underlying violation of 42 U.S.C. § 1985. Thus, "if the claimant does not set forth a cause of action under the latter, [his] claim under the former must also fail." *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696-97 (3d Cir. 1980). Because Plaintiff's claims under § 1985(3) should be dismissed for failure to state a claim, it follows that his § 1986 claims should likewise be dismissed.

### 4. ADA Claim

Plaintiff also cites to the ADA, 42 U.S.C. § 12101, et. seq, and claims he is disabled because he has a soy allergy, which exacerbates his obsessive-compulsive disorder. The Supreme Court has held that Title II of the ADA applies to discrimination against prisoners confined in state correctional institutions. *See Penn Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). To state a claim under Title II, a plaintiff must allege that: (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied of benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Brown v. Deparlos*, 492 Fed. App'x 211, 215 (3d Cir. 2012) (citing 42 U.S.C. § 12132). Plaintiff claims that by failing to provide him with an

adequate no-soy diet, Defendants violated the ADA. However, this claim fails because merely asserting that Defendants violated the ADA, without alleging any facts demonstrating that said denial was *because of* his disability, is insufficient to state a claim. *Id.*

Plaintiff also has not alleged that he was excluded from participating in or denied of benefits of any of the prison's services, programs, or activities. In fact, according to the complaint, the "Department of Corrections does not even list a 'No Soy' diet as one of its standard therapeutic diets." (Compl. at ¶ 57). Thus, Plaintiff cannot establish that he was deprived of a food program which does not exist. And even if such a program was available, he has not alleged any facts in which the Court could infer that the denial of a no-soy diet was plausibly the result of discrimination or because of his disability.

Moreover, assuming *arguendo* for purposes of this R&R only that Plaintiff is disabled under the ADA,[2] his allegations that he was unable to procure a no-soy diet, while perhaps raising Eighth Amendment and negligence concerns, do not constitute an ADA violation as a matter of law. *Rashad v. Doughty*, 4 F. App'x 558, 560 (10th Cir. 2001) ("[T]he failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation."); *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1001, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for the disability."). At most, the complaint alleges that Defendants are liable under the ADA because they have not accommodated Plaintiff's dietary and/or medical needs. Such allegations are insufficient as a matter of law to state a claim under Title II of the ADA. *See Brown*, 492 Fed. App'x at 215; *Bryant v. Madigan*,

---

[2] *But see Shirley v. Collier Cty. Sheriff's Office*, 2013 WL 2477261, *2 (M.D. Fl. 2013) ("Plaintiff by virtue of his food allergies is not a qualified individual for purposes of the ADA.").

84 F.3d 246, 249 (7th Cir. 1996) (simply failing to attend to the medical needs of its disabled prisoners, absent discrimination, does not violate the ADA).

Further, as the Court previously advised Plaintiff in its prior R&R, courts, including those in the Third Circuit, have held repeatedly that Title II of the ADA does not apply to actions against defendants in their individual capacities. *Gallagher v. Allegheny County*, No. 09-103, 2011 WL 184128 (W.D.Pa. Jan. 25, 2011).[3] "Although the Court of Appeals for the Third Circuit has not addressed the issue, [it] has held that there is no individual liability under Title III, and noted [that this] result comports with decisions of other courts of appeals holding that individuals are not liable under Titles I and II of the ADA, which prohibit discrimination by employers and public entities respectively.'" *Duffy v. Kent County Levy Court,* No. 09-198, 2010 WL 3909089, at *3 n. 2 (D.Del. Sep. 27, 2010) (quoting *Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002) (citations omitted)). Thus, the proper defendant in a Title II claim is the public entity itself or an official acting in his or her official capacity. *See Frederick L. v. Department of Public Welfare*, 157 F. Supp.2d 509 (E.D.Pa. 2001) (permitting official capacity suits against individuals under the ADA).

Accordingly, for all these reasons, the complaint fails to state a claim under Title II of ADA claim. Consequently, this claim should be dismissed.

### 5. Fourteenth Amendment Claim

The Court also recommends dismissing Plaintiff's Fourteenth Amendment claim. It appears that Plaintiff is attempting to bring this claim under the Equal Protection Clause of the

---

[3] However, individual capacity suits under the provisions of the ADA relating to retaliation / coercion claims are permitted. *See Shotz v. City of Plantation, Fla.,* 344 F.3d 1161, 1186 (11th Cir. 2003) ("the ADA's anti-retaliation provision permits personal capacity suits against individuals.") This provision is not applicable in this lawsuit as Plaintiff does not allege that any defendant acted in a retaliatory or coercive manner.

Fourteenth Amendment.  The Equal Protection Clause requires that all people similarly situated be treated alike.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Because, as explained above at Section II.C.2, *supra* (discussing the § 1985(3) claim), Plaintiff's allegations in the complaint "do not implicate a suspect or quasi-suspect class, the state action here is presumed to be valid and will be upheld if it is 'rationally related to a legitimate state interest.'"  *Tillman v. Lebanon Cty. Corr. Fac.*, 221 F.3d 410, 423 (3d. Cir. 2000) (quoting *Cleburne*, 473 U.S. at 440-42).  Therefore, to state a claim under the Equal Protection Clause pursuant to a "class of one" theory, a complaint must allege that the plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of WIllowbrook v. Olech*, 528 U.S. 562, 564 (2000).  In this context, a prisoner claiming that he was denied a special diet can only state a claim under the Equal Protection Clause if he alleges that he was intentionally deprived of the diet because of his membership in a particular class.  *See Jackson v. Gordon*, 145 Fed. App'x 774, 776 (3d Cir. 2005).

In *Jackson*, the prisoner plaintiff, who was severely lactose intolerant and allergic to eggs, alleged in his equal protection claim that certain defendants intentionally failed to provide him a sufficient therapeutic diet because he was a vegetarian.  *Id.*  The Court in *Jackson* noted that "[a]lthough vegetarians are not a suspect or quasi-suspect class, the District Court is still obligated to consider whether the prison had a rational basis for denying [the plaintiff's] diet *because he* is a vegetarian."  *Id.* (emphasis added).  Here, the complaint alleges that Plaintiff belongs to three separate, non-suspect classes: (1) people whose Eighth Amendment rights are being violated; (2) people who suffer from food allergies; and (3) people with mental disorders.  (Compl. at ¶ 38).  However, unlike in *Jackson*, the complaint *sub judice* does not allege any

13

well-pled facts that he was denied a no-soy diet *because of* his membership in any of these classes. As discussed above, the mere fact that Plaintiff was not provided a no-soy diet does not establish that Defendants intentionally discriminated against him. "Where there is no discrimination, there is no equal protection violation." *Tillman*, 221 F.3d at 424. Consequently, Plaintiff has failed to state a claim under the Equal Protection Clause of the Fourteenth Amendment.

### 6. Eighth Amendment Claim

The Court recommends allowing Plaintiff's Eighth Amendment claim to proceed. The Eighth Amendment imposes a duty upon prison officials to provide inmates humane conditions of confinement and to ensure that inmates receive, *inter alia*, "adequate food." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Laufgas v. Speziale*, 263 F. App'x 192, 198 (3d Cir. 2008) ("[P]risoners are guaranteed a *nutritionally adequate diet* under the Eighth Amendment.") (emphasis added) (citing *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980) ("This includes providing nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.")); *Jackson*, 145 Fed. App'x 774, 776 (3d Cir. 2005) (inmate stated a claim under the Eighth Amendment when he alleged that prison officials knew that he was severely lactose intolerant and allergic to eggs but denied him a therapeutic diet). At this stage, when liberally construing the complaint, the allegations contained therein are sufficient to survive the Court's initial *sua sponte* prescreening review.

### 7. Leave to Amend

In the interests of justice to this *pro se* litigant, *see Haines*, 404 U.S. at 520, it is recommended that Plaintiff be given leave to file an amended complaint which conforms with

the requirements of the Federal Rules of Civil Procedures and cures the deficiencies highlighted above (if he plausibly can).

## III. Conclusion

For the reasons discussed above, it is respectfully recommended that, pursuant to 28 U.S.C. § 1915(e)(2), all claims in Plaintiff's complaint, except for the Eighth Amendment claim, be dismissed for failure to state a claim. It is further recommended that Plaintiff be granted leave to file an amended complaint which cures the deficiencies highlighted above.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, Plaintiff is allowed fourteen (14) days to file written objections. Failure to timely file objections will constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

s/ Cynthia Reed Eddy  
Cynthia Reed Eddy  
United States Magistrate Judge

Dated: September 6, 2016.

cc: THE HONORABLE MARK R. HORNAK
 (electronic notification via CM-ECF)

 JASON KOKINDA
 P.O. Box 435
 Montgomery Center, VT 05471